834 So.2d 448 (2002)
Jonathan DUNNING
v.
DAPCO VENTURES, L.L.C.
No. 2001 CA 2366.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
Rehearing Denied December 19, 2002.
*450 Wayne H. Carlton, Jr., New Orleans, for Plaintiff-Appellee Jonathan Dunning.
Stephen W. Brooks, Jr., William G. Tabb, III, Covington, for Defendant-Appellant Dapco Ventures, L.L.C.
Before: PARRO, JAMES[1] and PATTERSON,[2] JJ.
JAMES, Judge Pro Tempore.
Defendant, Dapco Ventures, L.L.C. (Dapco), appeals a judgment signed by a workers' compensation judge (WCJ)[3] on *451 June 21, 2001, awarding claimant, Jonathan Dunning, medical benefits and weekly compensation benefits based on an average weekly wage of $500.00 and dismissing defendant's claims pursuant to La. R.S. 23:1208 and defendant's third party petition. For the following reasons, we now affirm.

FACTUAL AND PROCEDURAL HISTORY
This workers' compensation claim arises out of injuries allegedly sustained by Jonathan Dunning while he was working as an independent contractor for Dapco. Dunning had been hired to perform certain painting work at the Fountainbleu State Park in Mandeville, Louisiana. Dunning had previously worked as an employee for Dapco and other related companies, but for this particular job he was hired as an independent contractor. He used the name Gulf South Painting in contracting for the job with Dapco, although no formal business entity was ever formed and Gulf South Painting never had any bank accounts. The contract Dunning had with Dapco required that he procure a workers' compensation insurance policy to cover the employees he hired to help him complete the work.
On the second day on the job, which was either July 11 or 12 of 2000, Dunning claims that he was injured when he fell about five feet from a scaffold and landed on his left shoulder and neck. One of Dunning's employees, Tony Abbey, testified in his deposition that he was present at the time and witnessed the accident. Although Dunning advised one of the owners of Dapco, David Luparello, of the accident, he did not make an accident report, and he did not seek immediate medical treatment. He testified that he wanted to complete the job, as it was his first job as an independent contractor for Dapco, and he thought the pain in his neck and shoulder was not serious and would go away with time. Therefore, he continued to work, although he claims he was unable to perform most of the painting work that he had been able to perform prior to the accident. As a result, he testified he had to hire additional workers to help with the labor.
As the job progressed, Dunning claims he continued to have problems with his neck and shoulder. According to Tony Abbey and the two other painters hired by Dunning, Wayne Darmas and Sidney Darmas, Dunning complained about his neck and shoulder and was unable to perform much hard labor during the course of the job, and they mainly saw him performing less strenuous tasks that did not require heavy lifting or reaching overhead. However, Eric Folse, one of the owners of Dapco who visited the job site for about one or two hours each day, testified that Dunning continued to work hard even after his alleged injury and that he witnessed Dunning performing strenuous tasks, such as unloading the truck, carrying heavy objects, and painting.
On August 25, 2000, after a verbal disagreement allegedly took place between Dunning, his girlfriend, and some of the park rangers at Fountainbleu, Dunning was advised that his services were no longer needed. Thereafter, on August 27, 2000, about six weeks after his alleged accident, Dunning sought medical treatment at the Northshore Regional Medical Center emergency room, where he was given pain medication and advised to seek orthopedic treatment. He then went to Lallie Kemp Hospital on September 15, 2000, and the doctors there recommended an MRI.
On October 31, 2000, Dunning was examined by an orthopedic surgeon, Dr. Robert Ruel, who was of the opinion that *452 Dunning had a cervical disc herniation and tendonitis about the left shoulder. Dr. Ruel also found evidence of radicular pain and diminished to absent left biceps reflex. He recommended an immediate EMG and nerve conduction study of the left arm, an immediate MRI of the cervical spine, and an MRI of the left shoulder.
At the request of Dapco, Dunning was examined by Dr. Gordon Nutik on December 27, 2000. Dr. Nutik performed x-rays and concluded that Dunning may have sustained soft tissue injuries, such as muscle strains to the neck and left shoulder. He also thought there was the possibility of a cervical disc herniation, and he recommended EMG studies of the upper extremities, an MRI of the cervical spine, and an MRI of the left shoulder.
The MRI was performed on February 1, 2001, and the EMG was performed on March 6, 2001. These tests revealed a cervical disc herniation and a rotator cuff tear in the shoulder. Dr. Ruel then recommended physical therapy, followed by surgery if necessary, and Dr. Nutik initially concurred in the recommendation of surgery. However, after reviewing additional evidence, specifically medical records showing that Dunning had been involved in an accident in 1991 which he had failed to mention, and also a videotape of Dunning taken by a private investigator, Dr. Nutik changed his opinion and determined that surgery was not necessary. He also stated that he had "difficulty in relating causation of the findings on the diagnostic test of the neck as well as the left shoulder specifically to the work related injury that the patient states occurred on July 11, 2000."
After a trial on the merits was held on April 26, 2001, the WCJ found that a work related accident had in fact occurred and that Dunning had been injured in the accident and was temporarily totally disabled and entitled to medical benefits and weekly compensation benefits in the amount of $333.33, based upon an average weekly wage of $500.00. The WCJ ordered Dapco to pay the past due weekly benefits which had accrued from July 12, 2000, to April 26, 2001, with a credit for all periods of time Dunning had worked for other employers subsequent to July 12, 2000. The WCJ also awarded future weekly compensation benefits, as he found Dunning to be temporarily totally disabled. He further awarded past due medical expenses and ordered Dapco to authorize all necessary future medical treatment. Dapco's third party petition and its claims under La. R.S. 23:1208 were dismissed. Dapco now appeals.

LAW AND ANALYSIS
Dapco argues that the WCJ erred in concluding that Dunning had been involved in a work related accident, that his neck and shoulder injuries were caused by the accident, and that he was temporarily totally disabled as a result of the accident. Dapco also contends that the WCJ erred in dismissing its claims, pursuant to La. R.S. 23:1208, because Dunning had made misrepresentations and forfeited his right to workers' compensation benefits. To support these contentions, Dapco points out that Dunning did not seek medical attention at the time of the alleged accident and did not request or prepare a written accident report. Furthermore, Dapco notes the existence of conflicting testimony concerning the amount of manual labor Dunning was able to perform after the accident and concerning the exact time that Dunning hired the additional employees to help him complete the job.
With respect to the issue of causation, Dapco contends that, although Dunning repeatedly denied having had any previous injuries to his neck and shoulder, he had *453 in fact been injured in November of 1991 when he was hit in the head with a limb while cutting down a tree. This injury caused Dunning to lose consciousness for about five minutes, but he did not immediately seek medical attention. He sought treatment the next day because his head had become swollen. He was diagnosed with having contusions of the left parietal and right temporal areas. Dapco argues that this was a significant prior injury for which Dunning sought treatment until the end of 1993 and which could be the cause of his current neck and shoulder problems. Dapco points out that around December of 1992, Dunning reported experiencing paresthesias of the left arm a couple times per month since the accident and mild neck pain. Dapco is correct in that Dunning did seek treatment off and on until the end of 1993, and one of the medical reports did mention left arm paresthesias and mild neck pain. However, he was not treated for those conditions at that time because his primary complaint was headaches. He was being seen by a neurologist specifically for his headaches, and his headaches were the only thing for which he received treatment in connection with the 1991 injury.
Dapco has also focused much of its attention on alleged misrepresentations made by Dunning. Dapco argues that these misrepresentations provide proof that the WCJ erred in finding Dunning did not forfeit his right to workers' compensation benefits by making false statements. Dapco urges that the misrepresentations are proof that the WCJ erred in finding a causal link between Dunning's alleged accident and his neck and shoulder injuries and in finding Dunning to be disabled as a result of his alleged accident. For example, Dunning neglected to inform his treating physicians of his prior injury in 1991 when they inquired about his medical history. Dunning testified, however, that he considered the 1991 injury to be a head injury, not a neck or shoulder injury, and therefore, he thought it was irrelevant when he was questioned about his history of injuries to his neck and shoulder. Although there may have been some minor neck and shoulder pain associated with the 1991 injury, Dunning's primary concern was the injury to his head, and that is the only injury which required treatment at the time.
Dunning also went back to work in February of 2001 while the instant workers' compensation claim was pending, but he did not inform his doctors of this fact for several months. Dapco argues that this is proof of fraud and misrepresentation on the part of Dunning and that it is proof he was not in fact temporarily totally disabled. Dunning insists he had no choice but to go back to work because he was not receiving workers' compensation benefits, and he had no means of paying his bills or supporting himself and his daughter. He testified that he feared the bank would foreclose on his home, and therefore, he went to work painting for Advanced Bridge Systems, where his disability is accommodated. He testified that he does very little overhead work, he uses a lift so that almost everything he paints is eye level, and he is allowed to lie down and rest whenever the pain in his neck and shoulder gets to be too bad. He testified that he has good days and bad days, and his job at Advanced Bridge Systems gives him enough flexibility that he can work there even though he is still experiencing pain.
Dapco has placed emphasis on a videotape of Dunning taken by a private investigator between March 22 and March 30 of 2001, which shows him functioning and performing everyday activities, such as driving and pumping gas, in a normal manner. The tape shows that Dunning is able *454 to use his left arm and that he can turn his head to the left to a greater degree than described by his doctors. However, the tape is not conclusive evidence because it does not demonstrate the degree of pain or difficulty that Dunning may be experiencing while performing these tasks.
The arguments set forth thus far by Dapco concern findings of fact and determinations of credibility of witnesses made by the WCJ. This court may not set aside the WCJ's findings of fact in the absence of manifest error or unless clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, 549 So.2d at 844. The WCJ was in the position to hear the testimony, observe the witnesses, and perceive any variations in demeanor and tone of voice, and as long as his conclusions are reasonable in light of the record as a whole, this court may not reverse even if we would have weighed the evidence differently had we been sitting as trier of fact. Rosell, 549 So.2d at 844.
In the instant case, the WCJ obviously determined that the testimony of certain witnesses was more credible than others. Therefore, we must give his decision great deference because when a judge's finding is based on his decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Rosell, 549 So.2d at 845. However, an appellate court may find manifest error when documents or objective evidence so contradict a witness' story, or the story itself is so inconsistent or implausible, that a reasonable person would not credit the story. Rosell, 549 So.2d at 844-845. In the instant case, the objective medical evidence does not contradict Dunning's story, but it in fact supports it because the EMG and MRI tests show a cervical disc herniation and a rotator cuff tear in the shoulder. Furthermore, although Dunning may not have always been forthcoming with certain information, his story is not so inconsistent or implausible that a reasonable factfinder would not credit it. Additionally, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Rosell, 549 So.2d at 844. Accordingly, we conclude that the WCJ was reasonable in finding that Dunning was involved in a work related accident, that his neck and shoulder injuries were caused by the accident, that he was temporarily totally disabled as a result of the accident, and that he did not forfeit his right to workers' compensation benefits by making misrepresentations.
Dapco has argued that the WCJ erred in allowing the deposition testimony of Tony Abbey, Dunning's employee and friend, to be introduced into the record as evidence. Abbey was working with Dunning at the time of his accident, and he testified in his deposition that he witnessed Dunning fall from the scaffold and land on the floor. Dunning's trial counsel has stated that he attempted to have Abbey subpoenaed to testify at the trial, although there is nothing in the record to prove it, and Abbey claims never to have received a subpoena. Nevertheless, the WCJ held the record open after trial so that Abbey's deposition could be taken. Dapco argues that the deposition should not have been admitted because Abbey was not unavailable as a witness to testify at trial. Louisiana Code of Civil Procedure art. 1450(A) provides, in pertinent part:
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

*455 (a) That the witness is unavailable;
(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or
(c) Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
Under this article, the trial court has much discretion in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed on review in the absence of an abuse of that discretion. Dickens v. Commercial Union Ins. Co., 99-0698, 99-0699 (La.App. 1st Cir.6/23/00), 762 So.2d 1193, 1197. Under La. C. Civ. Proc. art. 1631, the court has the power to require that the proceedings shall be conducted so that justice is done. The objective of our judicial system is to render justice between litigants based on the merits of the controversy. Bankston v. Bankston, 97-2509 (La.App. 1st Cir. 11/6/98), 722 So.2d 46, 47. Litigants should be permitted all reasonable opportunity to place before the trial court all facts bearing on the issues involved. Bankston, 722 So.2d at 47. Accordingly, the trial court has much discretion in deciding whether to reopen a case to allow additional evidence, and its decision should be reversed only if it is a clear abuse of that discretion. Bankston, 722 So.2d at 47. Therefore, we conclude that the WCJ did not abuse his discretion in allowing the deposition testimony of Tony Abbey to be introduced into the record as evidence.
Dapco asserts that the WCJ erred in basing Dunning's weekly compensation benefits on an average weekly wage of $500.00 because that is not the amount of money Dunning actually earned on the Dapco job. The total amount of work contracted was $11,634.00; however, out of this total, Dunning had to pay certain supply costs and the wages of his employees, and therefore, he only received about $1,000.00 for the entire seven week job. This provides an average weekly wage of $143.00.
However, Dunning was not an employee of Dapco, and therefore, the provisions of La. R.S. 23:1021(10) defining "wages" are not applicable to his employment situation. He was working as an independent contractor, and according to the jurisprudence, if an independent contractor is engaged in manual labor of the same kind as that done by his employees, then his profits and overhead cannot be included as a part of his wages in calculating his weekly compensation benefits. Hamilton v. American Ins. Co., 439 So.2d 547, 550 (La.App. 1st Cir.1983); see La. R.S. 23:1021(6). Instead, in order to calculate his benefits, the court determines the prevailing wage basis for work similar in character and uses that figure as the basis for determining the weekly compensation benefits owed. Hamilton, 439 So.2d at 550. Therefore, based on the testimony concerning the hourly wages of experienced painters, the WCJ did not err in concluding that Dunning had an average weekly wage of $500.00.
Lastly, Dapco contends that the WCJ erred in dismissing the third party petition filed on behalf of Dapco against Gulf South Painting, seeking indemnification for any workers' compensation benefits it may be required to pay to Dunning based on its assertion that Dunning was an employee of Gulf South Painting, which was the subcontractor performing work for Dapco, the general contractor. However, *456 the WCJ concluded, and we agree, that Dunning utilized the name Gulf South Painting as his alter ego only, and no separate business entity by that name actually existed. Accordingly, Dapco is not entitled to any indemnification, and the WCJ did not err in dismissing its third party petition.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the WCJ awarding claimant, Jonathan Dunning, medical benefits and weekly compensation benefits based on an average weekly wage of $500.00 and dismissing defendant's claims pursuant to La. R.S. 23:1208 and defendant's third party petition. All costs of this appeal are assessed to defendant-appellant, Dapco Ventures, L.L.C.
AFFIRMED.
PARRO, J., dissents because I believe the claimant failed to prove temporary total disability by clear and convincing evidence as required by LSA-R.S. 23:1221(1).
NOTES
[1] Judge A. Clayton James, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] Michael A. Patterson is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[3] La. R.S. 23:1310.5(F) requires that the published court of appeal opinion identify the office of workers' compensation district from which the appeal was taken and the name of the WCJ who rendered the judgment. The WCJ was Honorable Robert W. Varnado, Jr. of the Office of Workers' Compensation Administration, District 6.