STEWART, J.
 

 _JjThe defendant, David Horace Harrison, appeals a judgment declaring the plaintiff, Holley Homestead Trust, the owner of 0.404 acres of land located along the boundary of the parties’ neighboring tracts. For the following reasons, we affirm.
 

 FACTS
 

 The property in dispute is a small area totaling 0.404 acres of land “situated in a portion of the Southeast One Quarter of the Southeast One Quarter of Section 30, T 22 N, R 6 E, Morehouse Parish, Louisiana,” according to a property description by professional surveyor, Frank M. Mes-singer. The disputed land is described as a slough, a low-lying area that holds water at times. The plaintiffs property is south of the slough, and the defendant’s property is north of the slough. The plaintiff claims ownership of the disputed property through acquisitive prescription of 30 years, whereas the defendant claims ownership by title.
 

 Plaintiffs ancestors in title include Ned Averiett, who acquired the property now alleged to include the disputed tract in 1940; his son, Tilmer Averiett, who obtained title through a judgment of possession dated August 22, 1986; and Travis Holley, who purchased the land from Til-mer Averiett on December 6, 1986. Holley then conveyed the property to Holley Homestead Trust, which he created. For clarity, the trust as plaintiff will hereafter be referred to in Holley’s name.
 

 The defendant’s ancestor in title is his father, Horace Harrison. David Harrison purchased the note on his parents’ property in January 2004. He states that the property has been in his family for over 60 years. It is |2undisputed that the 0.404 acres are included under the Harrison title. However, a fence or remnants of a fence on the northern high bank of the slough on the Harrison side of the boundary separates the disputed area from the rest of the Harrison land and encloses it with the Averiett land now owned by Holley. We will refer to this fence as the “north fence.”
 

 On May 1, 2006, the plaintiff filed a petition styled as a possessory action after David Harrison put up a barbwire fence across the slough, and below the disputed north fence line, allegedly to refix the boundary. According to the petition, the north fence was recognized as the boundary between the Averiett and Harrison properties, and the disputed 0.404 acres were maintained under that fence for more than 30 years. The petition asserts that Ned Averiett maintained the fence and raised cattle, hogs, and goats on the property.
 

 In response, Harrison asserted that he erected a fence in the slough along the true property line, and he alleged that Travis Holley disturbed his possession when he tore down the fence.
 

 Prior to trial, both parties filed motions in limine. Holley sought to prohibit David Harrison and witnesses on his behalf from
 
 *514
 
 offering comments, statements or alleged verbal communications involving Horace Harrison, Ned Averiett, and Tilmer Aver-iett, all of whom are deceased. Likewise, Harrison’s motion sought to prohibit Holley from offering evidence regarding the acts of possession and intent to possess the disputed land by Ned Averiett. Though the trial court granted both motions, the restrictions on testimony were ignored at trial.
 

 IsTRIAL TESTIMONY
 

 Plaintiffs Case
 

 Travis Holley purchased the Averiett property in 1986. He did not believe a survey was necessary to determine what he owned. The entirety of the tract was enclosed by a fence, which he believed indicated the boundary of the property. Holley described the fence as being made of “hog wire” held up by posts, trees, and crossties. We note that at the time of trial, only fence remnants remain in the disputed area.
 

 After the purchase, Holley began clearing the property, including the slough. He sprayed the fence line of his property to kill weeds every year or two. At one time, he put a culvert at the narrow end of the slough to hold water to attract water fowl, but the culvert was either removed or washed away. To restore its natural state, Holley obtained advice about native plants to grow in the slough. He testified that he put survey flags to mark the placement of the plants and prevent them from being mowed down. At the time of trial, the flags were no longer on the property, and Holley could not explain the reason for their disappearance.
 

 Holley testified that in January 2006, he found that a new fence had been put up through the slough. He cut the fence down, pulled up the posts, and threw the materials onto Harrison’s property. After Harrison filed a criminal complaint against him related to his taking down the fence, Holley filed the instant action on May 1, 2006.
 

 Before Harrison put up the new fence, Holley had not known of any boundary dispute with his neighboring property owner. Holley testified that |4he had a survey performed after or around the time of filing this suit; the survey performed by Messinger & Associates, Inc., is dated February 28, 2006. Holley testified that there was no evidence of a fence along the true property line between his and Harrison’s property. Moreover, he did not know whether the new fence put up by Harrison in January 2006, followed the true property line. Evidence of the fence upon which Holley bases his claim of possession of the disputed 0.404 acres consists of wire embedded in a tree from which core samples were taken. The samples indicated that the wire had been there over 30 years. Cross examination revealed that there are other trees in the area of the disputed property with wire running through them. Holley denied that he or any workers on his property tore down fences in the disputed area.
 

 Mary Erwin, the curator of Kalarama Nature Preserve in Collinston, Louisiana, visited Holley’s property eight years prior to trial. Holley sought her advice on how to maintain the slough in its natural state. Erwin recalled that the slough area she looked at appeared to have been recently cleared, but she could not say whether the particular area in dispute was cleared. She did not recall seeing a fence in the area.
 

 Holley also called Linda Laing, who lived near the Averiett property from 1962 to 1967. She recalled that a fence went around Ned Averiett’s entire tract of land and that he had cows, goats, and some
 
 *515
 
 times hogs roaming his property. She claimed to be familiar with the slough and recalled that there was a fence along it. She also said that she had visited the area in the last six months and thought it all looked the same. Crossjexaminatio% established that Laing had rarely gone to the disputed area of the slough.
 

 Frank Lee Messinger, III, was the professional land surveyor called by Holley. The parties stipulated to his qualifications as an expert in land surveying. Messinger testified that he did work for Holley twice. The first time he was asked to locate fences on the property when Holley was building in case Holley decided to clean the fence rows and make them look better. The second time was late 2005 or the early winter of 2006, when aerial photos of the area where taken. Messinger testified that there are two fence lines along the northern boundary of Holley’s property from Bayou Bartholomew up to the southwest corner of the disputed land, where he located a crosstie. Walking north and along the disputed area, Messinger found other crossties, which he said were tied in with the fence he used to determine Holley’s boundary. Messinger stated on cross-examination that another fence ran behind this line, but he denied finding evidence of any other fence going across the slough.
 

 Roy McGrew, a forester who manages some of Holley’s timber land, took a core samples from a water oak tree that had wire strands running through it. He determined from the growth rings that the wire had been in the tree at least 37 years.
 

 Holley also called David Harrison, who testified that he put a fence across the slough in January 2006, in the general area of the true property line. He claimed that another fence had originally been there from crosstie to crosstie, but that it had been moved to the high bank because of rotting. RHe was not sure of the dates when the original fence had been there or when it had been moved to the high bank. He also did not know whether the original fence was still there in 1986, when Holley purchased Ned Averiett’s land. Harrison also recalled that Ned Averiett had cows that would occasionally escape his land. He indicated that the fence outlined by Messinger is what kept the cows enclosed and off the Harrison land.
 

 Lastly, Holley introduced the deposition testimony of James Harrison, the brother of David Harrison. Overruling the defendant’s hearsay objection, the trial court allowed the deposition in lieu of live testimony due to James Harrison’s incarceration in federal prison. According to his deposition, James lived on the family farm until a sophomore in high school. He continued to help his father work on the farm until he joined the Navy for three years. Thereafter, he went back to farming the Harrison land. James did not recall there ever being a fence through the slough along the boundary line as per the Harrison property title. Nor did he recall a fence on the south side of the slough. The only fence he recalled was the one located on the north edge of the slough along a tree line, namely, the north fence. He stated that this fence line was considered the boundary line between the Harrison and Averiett properties and that it still existed when Holley purchased the Aver-iett property in 1986. James testified that he worked on the fence and that some trees were used as fence posts. Numerous fence lines were built one on top of the other along the tree line. According to James, his father would never give up an inch of land; so, if he had considered the slough Harrison property, there would have been a fence 17through it on the property line. With regard to the Averiett property, James recalled that Ned Aver-
 
 *516
 
 iett’s fences were always falling down and that his cattle roamed the entire parish before stock laws requiring fences went into effect.
 

 Defendant’s Case
 

 Nelda Janice Harrison Robinson, the sister of David and James Harrison, lived on the family farm until eighth grade and visited it many times after moving. She recalled that the property line between the Harrison and Averiett properties was marked by a fence through the slough in the 1950s and 1960s. Her father moved the fence to the north side of the slough on the high bank to prevent the fence posts from rotting, but she was not sure when this occurred. She did not recall what became of the fence along the property line. She also testified that Ned Averiett was unable to maintain his fences, so his cattle and hogs frequently escaped and got into the Harrisons’ crops. She never saw Ned Averiett repair his fences, and she never saw him doing anything in the disputed area of the slough.
 

 David Harrison testified that he worked on the Harrison property through his college years. He drove a tractor and did some work on the fences, which were often broken by cattle. He recalled that the opposite side of the slough was overgrown. When asked about activity he had observed on the Averiett land prior to 1986, he recalled that Ned Averiett had at times had row crops, cattle, goats, and hogs. However, this activity pertained to Aver-iett’s entire property and not just the disputed area. Harrison said that after Holley purchased the Averiett land he saw Holley | ^clearing underbrush in the slough and noticed that he had put a culvert and some plants. A month later, the culvert and plants were gone. In the early part of 2006, Harrison noticed survey flags placed in the slough. Some were in a straight line and some were in a curve. After Holley took down Harrison’s fence, Harrison noticed that the flags along the straight line were gone too. Harrison recalled that Ned Averiett had a fence along the high bank on his side of the slough and that Averiett’s fence was used to keep his cows out of the slough. He did not recall when he last saw that fence up.
 

 Trial Court’s Ruling
 

 Based on the testimony of plaintiffs witnesses, the expert testimony, and the physical evidence, the trial court determined that Holley and his ancestors in title openly possessed as owners the disputed area for over 40 years. The trial court noted that Holley’s ancestor in title raised cows and hogs in the disputed area for over 20 years and that Holley maintained and improved the slough for 20 years until David Harrison put up the fence soon after acquiring title to his family’s land. Noting that no evidence of such a fence was found by the experts or by the trial court’s own observation of the disputed area, the trial court rejected Harrison’s contention that there had been a fence along the time property line. Accordingly, the trial court rendered a judgment declaring the plaintiff to be the owner of the disputed property and assessing the defendant with fees and costs. Harrison’s appeal followed.
 

 | .DISCUSSION
 

 Though this matter was styled as a pos-sessory action, it is actually a boundary dispute between property owners of contiguous lands and was tried as such. Each claims ownership of the disputed 0.404 acres along a slough where their lands meet.
 

 In a boundary action, the court renders a judgment fixing the boundary between contiguous lands in accordance with the ownership or possession of the parties. La. C.C.P. art. 3693. The bound
 
 *517
 
 ary shall be fixed according to ownership of the parties; however, if neither party proves ownership, the boundary shall be fixed according to the limits established by possession. La. C.C. art. 792. If a party proves acquisitive prescription, then the boundary shall be fixed according to the limits established by prescription rather than by title. La. C.C. art. 794. Moreover, if a party and his ancestors in title possessed for 30 years without interruption and within visible bounds more land than their title called for, then the boundary shall be fixed according to these bounds.
 
 Id.
 
 Therefore, the party who relies on title will prevail unless the adverse party proves ownership by acquisitive prescription.
 
 Bowman v. Blankenship,
 
 34,558 (La.App. 2d Cir.4/4/01), 785 So.2d 134,
 
 writ denied,
 
 2001-1354 (La.6/22/01), 794 So.2d 794.
 

 Acquisitive prescription of 30 years extends only to that which has been actually possessed. La. C.C. art. 3487. The party claiming acquisitive prescription of 30 years must have corporeal possession of the property and the intent to possess as owner. La. C.C. art. 3424;
 
 Williams v. McEacharn,
 
 464 So.2d 20 (La.App. 2d Cir.1985). Corporeal possession means that 1,none exercises the physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425. Possession for purposes of acquisitive prescription must be continuous, uninterrupted, peaceable, public, and unequivocal. La. C.C. art. 3476.
 

 One claiming possession without title can show adverse possession by enclosures, meaning natural or artificial marks that give notice of the character and extent of possession.
 
 Ewald v. Hubbard,
 
 31,506 (La.App. 2d Cir.3/12/99), 737 So.2d 858,
 
 writ denied,
 
 99-1289 (La.6/25/99), 746 So.2d 602. However, what constitutes adverse possession depends on the nature of the property and must be determined on the facts of each case.
 
 Bennett v. Louisiana Pacific Corp.,
 
 29,598 (La.App. 2d Cir.5/9/97), 693 So.2d 1319,
 
 writ denied,
 
 97-1552 (La.10/3/97), 701 So.2d 199. Acts indicating adverse possession differ depending on the nature of the property. What suffices to show adverse possession of agricultural land, such as cultivation or using property as a pasture, differs from woodland where little may be done to indicate possession.
 
 Liner v. Louisiana Land & Exploration Co.,
 
 319 So.2d 766 (La.1975);
 
 Ryan v. Lee,
 
 38,352 (La.App. 2d Cir.4/14/04), 870 So.2d 1137,
 
 writ denied,
 
 2004-1531 (La.10/1/04), 883 So.2d 991.
 

 The burden of proof is on the party who pleads acquisitive prescription.
 
 Williams v. McEacharn, supra.
 
 Whether a party has possessed the disputed property for 30 years without interruption is a factual issue that will not be reversed on appeal absent manifest error or a showing of an abuse of discretion.
 
 Garner v. Holley,
 
 42,477 (La.App. 2d Cir.10/3/07),11 968 So.2d 234;
 
 Guillot v. Evans,
 
 31,591 (La.App. 2d Cir.2/26/99), 728 So.2d 1052,
 
 writ denied,
 
 99-1178 (La.6/4/99), 744 So.2d 631. Likewise, the determination of a boundary is a question of fact.
 
 Gam.er, supra.
 

 Harrison raises three issues on appeal. We first address his argument that the trial court erred in ignoring the orders granting the motions in limine. Harrison does not refer to any objection made by him to specific testimony at trial which would provide a basis for review. Moreover, there was no testimony regarding any statement by Ned Averiett, whether an oral or written assertion or nonverbal conduct intended as an assertion.
 
 [1]
 
 Testimony pertained to witnesses’ observations of Averiett’s land and his activities or lack
 
 *518
 
 thereof in the slough. We find no merit to the complaint that the trial court ignored the orders granting the motions in limine.
 

 Next, Harrison argues that the trial court erred in allowing the deposition testimony of James Harrison into evidence where his unavailability was not established and in relying on this testimony even though James’s credibility was subject to serious question. Though David Harrison asserts there was no evidence to establish James’s unavailability for trial, the record shows that both counsel indicated to the trial court that James was in federal prison. Under La. C.C.P. art. 1450(A)(3)(a), a deposition of a witness may be used at trial for any purpose when the witness is unavailable. Moreover, the trial court has much discretion in determining whether to allow deposition testimony at trial, and its decision [12to allow such testimony will not be disturbed unless an abuse of that discretion is shown.
 
 Dunning v. Dapco Ventures, L.L.C.,
 
 2001-2366 (La.App. 1st Cir.11/8/02), 834 So.2d 448,
 
 writ denied,
 
 2003-0215 (La.3/28/03), 840 So.2d 576. We cannot say on this record that the trial court abused its discretion in allowing the introduction of James Harrison’s deposition in lieu of live testimony. The trial court did not believe from its prior experience that the federal authorities would allow transfer of the witness to testify even if a writ of
 
 habeas corpus ad testificandum
 
 was requested. We note that prisoners do not even have the right to be physically present in court for their own civil actions.
 
 England v. Baird,
 
 1999-2093 (LaApp. 1st Cir.11/3/00), 772 So.2d 905. Also, review of James Harrison’s deposition shows that counsel for David conducted a robust examination of the witness. For these reasons, we cannot say that the trial court abused its discretion in allowing the introduction of James Harrison’s deposition.
 

 In making its findings of fact, the trial court relied on the deposition testimony of James Harrison. Both the testimony of David Harrison and the deposition of James Harrison reveal the bad relationship between the two brothers. However, James’s testimony shows that he was the person most familiar with the area in question. He grew up on the Harrison land and farmed it as an adult. In our three-tiered court system, fact finding is allocated to the trial court, and its evaluations of credibility, even when based on depositions offered in lieu of live testimony, are accorded great deference.
 
 Virgil v. American Guarantee and Liability Ins. Co., 507
 
 So.2d 13825 (La.1987). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal.
 
 Id.
 
 While we may have assessed James Harrison’s credibility differently if sitting as trier of fact, we cannot say that it was manifest error for the trial court to rely on his testimony given the totality of the evidence.
 

 Finally, Harrison contends that Holley failed to meet the burden of proving possession of the disputed area, particularly for the years 1976 to 1986, at which point Holley purchased the Averiett property and transferred it to the trust. Harrison argues that Holley failed to prove adverse possession of the 0.404 acres by his ancestor in title, Ned Avei-iett. According to Harrison, the intent of his and Holley’s ancestors in title was to fence around the slough on their respective high banks to prevent fence posts from rotting and to keep cattle from hiding in the slough.
 

 The trial court rejected David Harrison’s claim that a fence had marked the true boundary line in the slough, but that his father had moved the fence back on the high bank of the Harrison property to prevent rotting of the fence posts in the
 
 *519
 
 slough. The trial court noted that David’s memory appeared vague and that he was uncertain about many points during his testimony. We agree. Although there may be other trees in the area of the slough with fence wire, none were shown to be evidence of the original fence claimed by David. Even Harrison’s sister could not say when the fence alleged to have been on the property line was there or was moved to the north on the high bank. She recalled only that the fence had been there sometime during the 1950s and 1960s. The record provides a reasonable |i4basis for the trial court’s rejection of David Harrison’s claim about a fence along the true property line.
 

 The trial court found the evidence established that a fence existed all around the north side of Holley’s acreage and the slough. Our review supports this finding. The evidence shows that a fence existed on the north side of the slough in excess of 30 years and that Ned Averiett raised animals on his property, including in the area of the slough within the enclosure of the north fence. As stated, what constitutes adverse possession depends on the nature of the property and must be determined on the facts of each case.
 
 Bennett v. Louisiana Pacific Corp., supra.
 
 The slough does not appear to be the type of land where much can be done to indicate possession. The record shows that from the date of purchase in 1986, Holley cleared the area, placed a culvert, and planted native specimens to preserve the slough’s natural state. In the years prior to 1986, the property was enclosed by the north fence as part of Ned Averiett’s land and his livestock was allowed to roam the slough. There was no boundary dispute between the owners of the contiguous properties until David Harrison erected a new fence through the slough.
 

 Considering the deference owed the trial court’s factual determinations, we find that the evidence suffices to show possession by Holley and his ancestors in title of the disputed 0.404 acres within an enclosure for more than 30 years. We find no manifest error in the trial court’s judgment declaring the trust owner of the disputed property in accordance with the boundary as described by Messinger.
 

 |ir,CONCLUSION
 

 For these reasons, we affirm the trial court’s judgment at appellant’s cost.
 

 AFFIRMED.
 

 [1]
 

 . See La. C.E. art. 801(A), defining “statement” for purposes of hearsay.