MOORE, J.
hThe surviving spouse and major children of Myrtis Swillie filed a survival and wrongful death action against St. Francis Specialty Hospital (“SFSH”) and other defendants, alleging that they breached the standard of medical care which resulted in the death of the decedent. The claim against SFSH was dismissed by summary judgment. Plaintiffs appealed; we affirm.
FACTS
Mrs. Swillie, age 69, died on April 11, 2004, while undergoing medical treatment at SFSH. She had been admitted to SFSH seven weeks earlier on February 18, 2004, with diagnoses including congestive heart failure, diabetes, pulmonary edema, a recent myocardial infarction (heart attack), renal failure, sepsis, and a host of other medical problems. Prior to her admission to SFSH, Mrs. Swillie had spent three weeks in St. Francis Medical Center.
Mrs. Swillie was originally admitted to the SFSH by Dr. Emile Barrow who, as treating physician, was initially in charge of her care; however, several other specialists were involved, including Dr. Stephen Beene, a specialist in internal medicine. On April 1, 2004, the family asked Dr. Beene to take charge of Mrs. Swillie’s care. Dr. Beene had “signed off’ the case a week earlier, stating that “there is nothing new internal medicine has to offer,” after a CT scan of her brain revealed “a new ischemic infarct on the right.” Dr. Beene complained that the CT scan results were not telephoned to him, and he did not obtain the results until the next day.
Mrs. Swillie’s husband and three daughters, one an R.N. and the other a P.A., R.N., apparently implored Dr. Beene to-sign back on and take charge Lof the case. According to Dr. Beene, they felt that they had been kept out of the communication loop on the condition and treatment of Mrs. Swillie. Dr. Beene stated that “they told me I was the only one that would sit down and talk to them, examine their mother and go over what was going on[.]” On April 2, when Dr. Beene agreed to take charge of Mrs. Swillie’s care, he wrote on her chart the following order:
Transfer to Dr. Beene; discontinue all previous orders prior to now and proceed with the following: “All orders on this patient must be approved by Dr. Beene per family request[.]”
Dr. Beene complains that the nursing staff continued to follow other physician orders without his approval, one of which included giving Mrs. Swillie diuretics after gall bladder surgery, which, according to Dr. Beene, caused her to become “volume depleted,” i.e., dehydrated, and required dialysis on April 9 and 10, which he was *319 trying to avoid. Her condition worsened and she died on April 11.
Dr. Beene completed the death certificate and indicated the causes of death as (1) sepsis; (2) stroke; (3) myocardial infarction; and (4) congestive heart failure.
The plaintiffs subsequently filed a complaint with the Patients Compensation Fund against SFSH; Dr. Charles Morgan, chief of staff; St. Francis Medical Center; St. Francis Ambulatory Services; and Dr. Emile Barrow. The review panel unanimously found that the allegations against SFSH and Dr. Morgan were without merit. They concluded that Dr. Beene attended Mrs. Swillie only part-time, it was not practical for the staff to take everything through Dr. Beene because there were so many consultants on |sthe case, and Dr. Beene did not make any effort to correct this problem.
The plaintiffs then sued the same defendants, all of whom filed motions for summary judgment. The trial court granted all motions and dismissed all claims. The plaintiffs appeal only the dismissal of the claim against SFSH.
DISCUSSION
The appellate court’s review of a grant or denial of a summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 1999-2181, (La.02/29/00), 755 So.2d 226; Hinson v. Glen Oak Retirement Home, 34,281 (La.App. 2 Cir. 12/15/00), 774 So.2d 1134. A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
The burden of proof on a motion for summary judgment remains with the mov-ant. Samaha v. Rau, 2007-1726 (La.02/26/08), 977 So.2d 880. When the movant, however, will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, he is not required to negate all the essential elements of the adverse party’s claim, action or defense. Id.; Hinson, supra. Rather, the movant need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Samaha, supra; Hinson, supra. Then, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, 14there is no genuine issue of material fact and movant is entitled to summary judgment. La. C.C.P. art. 966 C(2).
The plaintiff bears the burden of proving that a healthcare provider committed malpractice. Wiley v. Lipka, 42,794 (La.App. 2 Cir. 02/06/08), 975 So.2d 726, writ denied, 2008-0541 (La.05/02/08), 979 So.2d 1284. Any medical malpractice claimant must establish, by a preponderance of the evidence: (1) the defendant’s standard of care; (2) the defendant’s breach of that standard of care; and, (3) a causal connection between the breach and the claimant’s injuries. La. R.S. 9:2794 A; Pfiffner v. Correa, 94-0924, 0992 (La.10/17/94), 643 So.2d 1228; Wiley, supra.
Expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. In Pfiffner, supra, the supreme court explained, “Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body, from which a *320 lay person can infer negligence.” Samaha, supra; Vinson v. Salmon, 34,582 (La.App. 2 Cir. 05/09/01), 786 So.2d 913. In most cases, however, because of the complex medical and factual issues involved, a plaintiff who does not present medical expert testimony will likely fail to sustain his burden of proof under the requirements of La. R.S. 9:2794.
The plaintiffs raise two assignments of error: (1) the trial court erred in concluding that there was not sufficient evidence of liability and causation in light of the testimony of Mrs. Swillie’s treating physician, Dr. |sBeene, in that regard, and (2) the trial court erred in granting SFSH’s motion for summary judgment based on causation.
We have carefully reviewed the entire record and particularly the deposition testimony of Dr. Beene, the plaintiffs’ expert. Dr. Beene acknowledged therein that his two main complaints regarding SFSH were the hospital staffs failure to promptly report the results of the CT scan performed on March 26, 2004, and the administration of diuretics on April 9, 2004. Dr. Beene also generally criticized SFSH, complaining that there was never a nurse to discuss the case with, there were never results on the chart, and nurses frequently did not follow orders that were written on the chart.
Dr. Beene recalled that he was contacted on a Friday afternoon by a nurse who reported that Mrs. Swillie had been unresponsive for three days. Although Dr. Beene was certain that he had ordered the CT scan, the written record indicated that Dr. Roy, apparently one of his associates, wrote the order. The CT scan was to be done “stat,” which means immediately or without delay. The CT was done on Friday evening and revealed a “new area of ischemic infarction,” but Dr. Beene was not immediately notified. He came across the report on the chart, or obtained the report, around noon the next day, Saturday. After getting the report, Dr. Beene stated that he “documented the facts, listed all the consultants, contacted the neurologist on the case and signed us off.” He did not order any specific treatment for Mrs. Swillie himself, and stated that he agreed with the treatment ordered by the neurologist in response to the report.
| ((When asked why he signed off on the case, Dr. Beene stated that Mrs. Swillie had eight other specialists- treating her at the time, and his own medical group, Internal Medicine Service, was “not actually contributing anything to her case, maybe adding to confusion if anything.” He wrote in the sign-off note that if there was anything specific he or his associates could do to assist Mrs. Swillie’s care, they would return to her case.
The alleged act of negligence, then, arises out of Dr. Beene’s complaint that he was not notified on Friday evening regarding the results of the CT scan. Dr. Beene stated in his deposition that when the results showing the new infarct came in, he should have been notified that night. He clearly believed that this failure fell below the appropriate standard of medical care, indicating that the infarct could have evolved into a hemorrhage which would require immediate attention.
Dr. Beene was ambivalent, however, regarding whether the delay in giving him the radiology report damaged Mrs. Swillie or hastened her death. On the one hand, Dr. Beene stated that it was “more probable than not” that the delay in getting him the report caused specific damage to Mrs. Swillie. However, moments later, when asked to identify the damage caused by the delay, he stated that “she had some baseline neurologic problems already, so I couldn’t tell you exactly right now,” and “it *321 was difficult to determine if it was from the infarct, or if it was from the volume depletion due to over-diuresis.”
Although he could not point specifically to anything at the moment, he did think it was one of the things that led to her passing away, but he [ 7foil owed that by stating, “In retrospect, I don’t think it made a difference.” Finally, when asked again if the radiology report had been brought to his attention on March 26 instead of March 27, would Mrs. Swillie’s death have been prolonged, Dr. Beene responded: “It’s impossible to say that their negligence would have resulted in prolonging her death.”
The second incident of which the plaintiffs and Dr. Beene complain concerns the administration of the diuretics, Diuril and Demadex, on April 9, 2004. This occurred after Dr. Beene had taken charge of Mrs. Swillie’s care on April 2. Dr. Beene stated in his deposition that, at the family’s request, he specifically asked “them” not to administer any medications to Mrs. Swillie that were not already ordered and approved, without calling him. Nevertheless, the nurses apparently administered the two diuretics pursuant to an order by Mrs. Swillie’s treating cardiologist, Dr. Barrow, without contacting Dr. Beene for approval. Dr. Beene admitted that he had not spoken personally with Dr. Barrow regarding the family’s request that all orders be approved by him.
Dr. Beene believed that the result of the administration of diuretics was to cause “volume depletion” in Mrs. Swillie, so he consulted a specialist to do dialysis to correct her volume status. He said that it worked nicely and bought some time.
When asked whether the administration of Diuril and Demadex on April 9 caused any damage to Mrs. Swillie, Dr. Beene stated: “It finished the job. The damage was already occurring and so I think it made us do something we were trying to avoid, which was dialysis.” He stated he | ¿would have cancelled the order to administer the two diuretics had he known about it. He believed that it was more likely than not that the dialysis would not then have been necessary. However, he stated that the dialysis did not harm Mrs. Swillie, and, in fact, bought her some time. The effect of the dialysis was to reverse the effect of the two diuretics, which he believed was leading her to renal failure. When asked if it was more probable than not that without the administration of Diuril and Demadex would Mrs. Swillie’s life have been prolonged, Dr. Beene responded, “Unknown.”
It is clear from Dr. Beene’s testimony that the incidents described by him regarding the staff at SFSH perhaps reflected substandard care. However, whether there was a causal link between these incidents and any damage to Mrs. Swillie is not established by Dr. Beene’s ambivalent testimony in this regard. For this reason, on de novo review, we agree with the trial court that a jury could not reasonably find by a preponderance of the evidence that the plaintiffs are entitled to a verdict against SFSH. Accordingly, the trial court’s granting of summary judgment on the basis of causation was appropriate.
CONCLUSION
For the reasons expressed, the judgment is affirmed at appellants’ costs.
AFFIRMED.