WILLIAMS, J.
|,The defendants, Dr. Henry Zizzi and LAMMICO, and intervenor, The Patient’s Compensation Fund, appeal a judgment in favor of the plaintiff, Shirley Thompson. The trial court found that Dr. Zizzi was negligent in leaving gauze in the plaintiff during surgery and awarded to plaintiff the amounts of $14,276.51 in medical expenses and $125,000 in general damages. For the following reasons, we affirm.
FACTS
In September 2008, Shirley Thompson saw her primary care physician, Dr. Thomas Colvin, with a complaint of boils or sores on her buttocks. Dr. Colvin prescribed antibiotics to treat the boils. After the condition persisted for some time, Dr. Colvin referred Thompson to Dr. Russell Cummings, a general surgeon in Columbia, Louisiana. Dr. Cummings saw Thompson in June 2009, and bégan treating the boils with antibiotics' and warm soaks. This treatment did not resolve the problem and Dr. Cummings recommended surgery. Thompson returned to Dr. Colvin, who referred her to a surgeons’ group in West Monroe that included Dr. Henry Zizzi.
Thompson first saw Dr. Zizzi on September 17, 2009, with a complaint of boils on her left and right buttocks. The next day, at Ouachita Community Hospital, Dr. Zizzi surgically excised the boils on the left and right sides. His operative note states that he found a “sinus tract” in- the left gluteus, made an incision and debrided the scar tissue from the tract. Dr. Zizzi then debrided the right side. According to the operative notes of the surgeon and. the circulating nurse, the wounds were packed wittd/íi inch-kwide gauze. After the surgery, Thompson was discharged that day and returned home. ,
Dr. Zizzi ordered Mangham Home Care, Inc. (“Mangham”) to provide Thompson with daily wound care, which required a nurse to remove the old gauze from each wound, clean the area, replace the gauze and bandage the. wounds. Colinda Jones, a registered nurse and employee of Mang-ham, later stated that on the day after the surgery, she removed the strips of gauze placed during surgery, cleaned the wounds and packed Thompson’s wounds with fresh gauze. Except for two occasions when Thompson was seen by Dr. Zizzi in his office, this procedure was followed every day by different nurses from September 19, 2009, until October 14, 2009, when Mangham was ordered to cease packing Thompson’s wounds. On September 30, 2009, Dr. Zizzi saw Thompson at his office and he packed her wounds. On October 28, 2009, Thompson was again seen by Dr. Zizzi, who told her that both the right and left wounds on her buttocks were closed and healed.
However, the left wound reopened and Thompson returned to Dr. Zizzi on November 12, 2009, when he placed some gauze into the wound.. At his instruction, Thompson removed this , gauze -herself several days later. After that visit, no one placed, any gauze into the left wound, which continued to periodically reopen and then close during the period from December 2009 to. July 2010, when Thompson returned to Dr. .Zizzi. On July 13, 2010, Dr, Zizzi performed a second surgery to excise the left wound with an incision 2.5 cm deep. After this surgery, he did not use any gauze, -but stitched -the wound closed. On July 29, 2010, Thompson returned to Dr. Zizzi, who removed the su *224 tures and stated that the left wound was healed.
Is After Thompson was involved in an auto accident in August 2010, her urologist ordered a CT scan of her abdomen and pelvis. A radiologist reviewed the scan and noted a sinus tract in the area where Dr. Zizzi had operated. On August 18, 2010, Thompson returned to Dr. Zizzi because her left wound had reopened. He deferred treatment at that time because she was concerned about recent tests showing possible cancer. A short time later, Dr. Zizzi referred Thompson to Dr. Michael Stratton, a colo-rectal surgeon. After an examination, Dr. Stratton scheduled surgery, which he performed in October 2010, During the procedure on Thompson’s left side, Dr. Stratton found and removed from the wound a strip of 1/4-inch gauze that was 11 inches long. Following this surgery, Thompson did not have any further problems with that wound.
In August 2011, the plaintiff, Shirley Thompson, filed a petition for damages against the defendant, Mangham Home Care, Inc., which was not a qualified health care provider under the medical malpractice statute. The plaintiff also filed a complaint seeking a medical review panel (“MRP”) against Ouachita Community Hospital (“OCH”), Dr. Zizzi and his insurer, LAMMICO. The MRP issued an opinion finding that it could not be determined from the medical evidence whether the gauze had been placed in the wound by the physician, the home health nurses or the-patient. Plaintiff then amended her petition against Mangham to add OCH, Dr. Zizzi and his insurer as defendants. After discovery, OCH’s motion for summary judgment was granted" and it was dismissed from the lawsuit. Prior to trial, Mangham settled with plaintiff and was also dismissed from the action.
Following a bench trial, the court issued written reasons finding that the plaintiff proved by a preponderance of evidence that Dr. Zizzi had |4negligently left the gauze in the wound during the September 2009 surgery, based upon the depth of the gauze, the scar tissue around the object and the lack of healing after the surgery. The trial court rendered judgment against the defendants, awarding to plaintiff the amounts of $14,276.51 in medical expenses and $125,000 in general damages. Pursuant to the Medical Malpractice Act, the court assessed to the Patient’s Compensation Fund (“PCF”) the amount of damages in excess of $100,000. The PCF’s motion to intervene was granted. The defendants and the intervenor appeal the judgment.
DISCUSSION
The defendants and intervenor contend the trial court erred in finding that the strip of gauze removed from plaintiff in October 2010 had been placed by Dr. Zizzi in the surgery of September 2009. They argue that plaintiff failed to present sufficient evidence to support this finding because the medical records show that the gauze placed by Dr. Zizzi during that surgery was removed by a nurse the next day and was a different size than the gauze later found in plaintiffs body.
The plaintiff has the burden of proving that a healthcare provider committed malpractice. Swillie v. St. Francis Medical Center, 45,543 (La.App.2d Cir.9/22/10), 48 So.3d 317. A medical malpractice claimant must prove by a preponderance of the evidence (1) the applicable standard of care; (2) that the defendant breached that standard of care; and (3) a causal connection between the breach and the claimant’s injuries. LSA-R.S. 9:2794; Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228; Swillie, supra. Proof is sufficient to constitute a preponderance *225 when the entirety of the evidence, both direct and circumstantial, shows that the fact or causation |,-sought to be proved is more probable than .not. Cangelosi v. Our Lady of the Lake Regional Medical Ctr., 564 So.2d 654 (La.1989). Circumstantial evidence is evidence of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred. Cangelosi, supra.
An appellate court should not set aside a trial court’s factual finding in the absence of manifest error. The issue is whether the factfinder’s conclusion was reasonable based on the record as a whole. Stobart v. State DOTD, 617 So.2d 880 (La.1993).
In the present case, defendants and PCF assert in their briefs that plaintiff failed to show by a preponderance of evidence .that Dr. Zizzi placed the ⅜-inch gauze in the wound during the surgery in September 2009. To support this assertion, they primarily rely on Dr. Zizzi’s operative repgrt and the nursing notes, which state that ⅜-inch gauze was used in that surgery. They also point out that the Mangham records show that a piece of gauze placed at. surgery was removed by a nurse the next day.
The record contains the deposition of Dr. Stratton, who testified .that in October 2010, he performed surgery to excise an infected wound on the plaintiffs left buttock. Dr. Stratton stated that he removed a foreign object from the wound located at a depth of approximately three inches (6 cm) from the skin surface. The object was later determined to be gauze 11 inches long and ½ inch wide. Dr. Stratton opined that the gauze had prevented the wound from healing and should not have been left in the patient. .
Dr. Partington, a radiologist, testified by deposition that he reviewed plaintiffs CT and PET scans taken in August 2010. Dr. Partington opined that the CT scan shows a sinus tract containing a mass at the same location | ¿where the gauze was . found by Dr. Stratton. Based on these studies, Dr. Partington was confident that the gauze later removed from plaintiffs body was already present when the CT scan was done on August 5, 2010. Dr. Partington did not believe that the gauze was placed after that time because it would be very difficult for a nurse or an individual to push gauze that deep into a wound. Dr. Partington acknowledged that he had not seen the mass when he initially reviewed the scans.
The plaintiffs surgery expert. Dr. Leo Murphy, testified that he is licensed to practice in California and that he had reviewed the medical records for this case. Dr. Murphy opined that Dr. Zizzi had breached the standard of care for general surgery by failing to accurately describe in his report how deep the gauze was placed in the body during the surgery in September 2009, failing to' ensure that the gauze • was removed from the patient and failing to find the gauze in the second surgery in July 2010. Dr. Murphy testified- that, given the depth at which the gauze was found it was unlikely that, a Mangham nurse or another person could have placed the gauze at that location. Dr. Murphy noted that after the Séptember 2009 surgery, the right side healed while the left wound did not, indicating that a foreign object could be present deeper in the wound. Based on these factors, Dr. Murphy opined that more probably than not Dr. Zizzi had left the gauze in the wound during the surgery in September 2009.
Dr. Claude Minor was accepted as an expert in general surgery.. Dr. Minor opined that Dr. Zizzi had satisfied the standard of care in performing the surgeries in September 2009 and July 2010. Dr. *226 Minor testified that based on the notes of Dr. Zizzi and the nurse stating that ½-inch gauze was used during the surgery in September 2009, he did not believe that Dr. ZizziJjhad left the 54-inch gauze in the wound or that two. pieces of gauze had been used. Dr. Minor opined that the gauze could not have been removed so easily by Dr. Stratton if it had been in the wound since the September 2009 surgery. Dr. Minor did not agree that a foreign object was shown by the CT scan of August 2010. Dr., Minor was unable to. explain how the gauze was placed in that area of plaintiffs body, but he did not believe Dr. Zizzi had left the gauze.
Dr. Zizzi testified that lie placed gauze in the left wound during the surgery in September 2009, but according to his report and the nursing notes, he used ½-inch gauze and not the/4-ineh gauze ‘that was later found. Dr. Zizzi acknowledged that there was ⅛-inch gauze in his office at the time, but he was confident that he had not used that ’ size during the surgery. Dr. Zizzi did not recall'the depth of his surgery in September 2009 and his'report failed to note the depth. Dr. Zizzi admitted that Dr. Stratton removed the gauze from the same location where he had performed the' surgery' in September 2009.
Contrary to the defendants’ assertion of a lack of evidence, the depth of the gauze in the wound indicates that the gauze was placed during the September 2009 surgery based on the testimony of all the medical witnesses, except Dr. Zizzi and his expert, that plaintiff would have needed to be under anesthesia for the gauze to be placed at that depth. The CT scan of August 2010 showing the presence of a mass in the sinus tract is evidence indicating that the gauze was likely also present several weeks earlier, in July 2010, when Dr. Zizzi performed the second surgery and stitched the wound closed. However, Dr. Zizzi did not find the gauze because he went to a depth of 2.5 cm, but the gauze was approximately 6 cm deep in -the wound. The failure 1 sof the left wound to-'-heal is additional evidence that the gauze was placed during the surgery in September 2009.
In its brief, the PCF contends the trial court' improperly applied the burden of proof and states that the doctrine of res ipsa'loquitur is not applicable in this case. In the written reasons for judgment, the trial court notes that the ‘plaintiff has the burden of proving by a preponderance of the evidence that Dr. Zizzi failed to' meet the applicable standard of care. Based upon this record, the PCF has not shown that the trial court applied either the incorrect burden of proof or the res ipsa doctrine. Thus, PCF’s argument lacks merit.
The trial court heard' the testimony and weighed the medical evidence. Based upon our review of this record as a whole, we cannot say the trial court was clearly wrong in finding that the plaintiff proved by a preponderance, of the evidence that Dr. Zizzi left the gauze in the wound during the surgery in September 2009, and failed to remove the gauze in July 2010. Thus, the evidence presented supports the court’s determination that Dr. Zizzi breached the applicable standard of care in treating the plaintiff. The assignments of eiTor lack merit.
Alternatively, defendants and intervenor contend the trial court erred in assessing all fault to Dr, Zizzi. They argue that if the gauze was left during the surgery in September 2009, then Mangham must be assigned some degree of fault for the failure to remove the gauze after surgery.
A party asserting comparative fault has the burden of proving by a preponderance of evidence that the other party’s fault was a cause of the damage sus *227 tained. Pruitt v. Nale, 45,483 (La.App.2d Cir.8/11/10), 46 So.3d 780. A trial court’s finding as to the percentage of fault is a factual ^determination and must be upheld on appellate review unless clearly wrong, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).
In this case, Colinda Jones, a registered nurse employed by Mangham, testified that when removing the gauze in plaintiffs wound on the day after surgery in September 2009, she relied on the standard of care providing that one piece of gauze is placed in each wound during surgery. Jones stated that after the surgery, she removed the gauze which was placed 3 cm inside the left wound. Defendants did not show that the nurse had a duty to look for another piece of gauze at a lower depth in the surgical wound without having notice of such. In addition, Dr. Zizzi had an opportunity to examine the entire wound during the surgery of July 2010, but failed to find the gauze. Based upon this record, we cannot say the trial court erred in assessing 100% fault to Dr. Zizzi. Thus, the assignments of error lack merit.
The defendants contend the .trial court erred in excluding from evidence the deposition of Todd Shaffett, a nurse specializing in wound care. Defendants argue that the deposition of Shaffett should have been admitted because he was listed as an expert witness by Mangham and Dr. Zizzi had included as his potential witnesses any witness listed by the other parties.
The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds that the witness resides more than 100 miles from the place of trial. LSA-C.C.P. art. 1450(A)(3)(b). Any party may use the deposition of an expert witness for any purpose upon notice to all counsel of record, who may object to the deposition and require the expert’s live testimony. LSA-C.C.P. art, 1450(A)(5). The trial court has much discretion in determining whether- to allow deposition testimony at trial and its decision will not be disturbed absent an abuse of , such discretion. Holley Homestead Trust v. Harrison, 44,149 (La.App.2d Cir.4/15/09), 11 So.3d 511.
In this ease, the defendants have not shown that they provided notice to plaintiffs counsel of their intent to use , the expert’s deposition in lieu' of live testimony at trial pursuant to Article 1450, Consequently, we "cannot’ say the trial court abused its discretion in excluding the deposition of Shaffett. -Thus, the assignment of error lacks merit."
CONCLUSION
For the foregoing reasons, the trial court’s judgment is-affirmed. Costs of this appeal are assessed to the appellants, Dr. Henry Zizzi, LAMMICO and PCF,
AFFIRMED.